UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO M.,<br><br>      Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>      Defendant. | Case No.: 23-cv-1926-TWR-KSC<br><br>**REPORT AND RECOMMENDATION** |

  Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 9, 10. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court issues the following Report and Recommendation to the assigned District Judge.

////

////

////

////

////

# I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits. AR 268-74.[1] The Social Security Administration denied the claim. AR 146-50. The Administration denied plaintiff's claim upon rehearing. AR 166-72. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 173-74. Plaintiff, represented by counsel, appeared before the ALJ. AR 32-54. Plaintiff's attorney and the ALJ both examined plaintiff at the hearing, and the ALJ received testimony from a vocational expert ("VE"). *See id*. After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ ultimately concluded plaintiff was not disabled. AR 14-26.

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant could perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 18-19. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is or is not disabled. *See* 20 C.F.R. § 404.1250(a)(4).

As a threshold finding, the ALJ established plaintiff's date last insured ("DLI") was September 30, 1997. AR 19. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 1, 1992, the alleged onset date of his disabling conditions. *Id.* At step two, the ALJ found plaintiff had the following severe impairments: "alcohol use disorder, HIV, hypertension, sexual arousal disorder, generalized anxiety disorder, adjustment disorder with mixed emotional features, stimulant use disorder, [and] methamphetamines and opiate use in remission in 2022." AR 19-20. The ALJ also found

---

[1] The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

plaintiff had the following non-severe impairments: obesity, tobacco use, hepatitis C, and piriformis syndrome. AR 20. At step three, the ALJ found none of plaintiff's impairments met the applicable regulatory Listings. AR 20-21.

At step four, the ALJ found plaintiff had the residual function capacity to "perform medium work" with the modifications that plaintiff could "lift, carry, push, [or] pull 25 pounds frequently and 50 pounds occasionally, stand and/or walk 6 hours, [and] sit 6 hours in an 8-hour workday with normal breaks." AR 21. The ALJ also found plaintiff limited "to understanding, remember, and carrying out simple, routine, repetitive tasks, with breaks every two hours" and "to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product." *Id.* The ALJ also found plaintiff "cannot perform highly time pressured tasks such that [plaintiff] is limited to generally goal-oriented work, not time sensitive strict production quotas . . . ." AR 20-21. Finally, plaintiff was limited to working "in a low-stress environment where there are few work place changes" and where plaintiff "has minimal decision-making capability." AR 22.

Although the ALJ found plaintiff had no past relevant work, the ALJ also found at step five that plaintiff could perform some jobs existing in significant numbers in the national economy, including laboratory equipment cleaner, industrial cleaner, and kitchen helper. AR 25-26. The ALJ thus concluded plaintiff was not disabled. AR 26. The Commissioner's decision became final on August 15, 2023, when the Appeals Council denied plaintiff's request for rehearing. AR 1. This appeal followed.

## II. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### **III. ANALYSIS OF THE COMMISSIONER'S DECISION**

The parties identify only a single issue for this Court's review: whether the ALJ erred by failing to determine whether plaintiff would be required to complete, and whether he could in fact complete, a probationary or training period prior to engaging in ordinary work. Doc. No. 11 at 6; Doc. No. 17 at 3. More specifically, the parties dispute whether making such a finding fell within the scope of the ALJ's mandatory obligation to fully develop the record. *Compare* Doc. No. 11 at 9 *with* Doc. No. 17 at 7. It is not disputed that plaintiff's RFC, as found by the ALJ, precluded sustained interactions with co-workers. *See* AR 22. The parties dispute only the significance and effect of this fact.

Plaintiff claims the mere fact that the ALJ was aware of this restriction triggered the ALJ's duty to *sua sponte* ascertain whether the jobs existing in the national economy for which plaintiff was qualified would require plaintiff to go through a training or probationary period. *See* Doc. No. 11 at 8. According to plaintiff, this is a relevant consideration because even though plaintiff would be able to perform some work if he did not have to regularly interact with co-workers, he would nonetheless be disabled if working would require an initial training period because his inability to interact with coworkers would prevent him from completing any kind of training period given the need for increased personal interaction during training. *See id.* Defendant does not explicitly deny this *could* be a valid basis for finding a plaintiff disabled. Instead, defendant argues it was

plaintiff's burden to tender that issue to the ALJ and prove the underlying facts, and so the ALJ had no obligation to engage in independent factfinding beyond ascertaining whether there were jobs suitable for plaintiff given plaintiff's RFC. *See* Doc. No. 17 at 3-7.

Case law establishes the existence of the ALJ's mandatory duty to develop the record, which exists even when a claimant is represented by counsel at the hearing before the ALJ. *See E.M. v. Kijakazi*, 591 F. Supp. 3d 595, 618 (N.D. Cal. 2022). But that duty is hardly boundless because the claimant bears the ultimate burden of proving disability, and the ALJ's duty to further develop the record is only triggered when the evidence is "ambiguous" or "inadequate" such that an ALJ cannot properly evaluate it. *See id.* (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The parties agree there is no *binding* authority that resolves the specific issue of whether an ALJ must independently engage in factfinding about probationary or training periods when faced with a claimant whose RFC precludes sustained workplace interactions with colleagues. *See* Doc. No. 11 at 7; Doc. No. 17 at 5. But, as the Court has already explained, they diverge markedly on what the result *should* be.

Whether the facts of this case triggered the ALJ's affirmative duty to inquire further may prove outcome determinative because, although it is undisputed the ALJ did ***not*** inquire further, it is also undisputed that plaintiff did ***not*** raise the issue during the administrative hearing. *See* Doc. No. 17 at 7; Doc. No. 18 at 3. Thus, the Court must determine which of the parties to this dispute bore the burden of first tendering this specific issue. The default rule is that a claimant "must raise issues at [the] administrative hearings in order to preserve them on appeal" before an Article III court. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *accord Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018). The history of the doctrine is a bit tortuous. Shortly after the Ninth Circuit decided *Meanel* in 1999, the Supreme Court issued an opinion that could be interpreted as abrogating *Meanel*. *See Sims v. Apfel*, 530 U.S. 103, 120 (2000) ("[W]e hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals

1  Council in order to preserve judicial review of those issues."). For nearly two decades after
2  that, some District Courts treated *Meanel* as overruled. *See, e.g.*, *Moreno v. Berryhill*, 2017
3  U.S. Dist. LEXIS 70806, at *8-9 (E.D. Cal. May 8, 2017) (collecting cases and considering
4  a potential conflict in vocational expert testimony for the first time on appeal). Then, in
5  2018, the Ninth Circuit brought *Meanel* back from the dead, distinguishing *Sims* as limited
6  only in cases where a claimant failed to present an issue to the Appeals Council in the first
7  instance, and consequently holding that an issue is only waived if the plaintiff fails to
8  present it to the ALJ *and* the Appeals Council. *See Shaibi*, 883 F.3d at 1109.

9        The Supreme Court later announced a rule of general application for resolving
10 whether courts should impose an issue exhaustion requirement in certain Social Security
11 cases. *See generally Carr v. Saul*, 593 U.S. 83 (2021). That case allowed exceptions when
12 the issue would fall well outside the agency adjudicator's area of expertise or where raising
13 the issue before the agency would be futile. *See id.* at 92-93. Although, Circuit-level
14 authority provides more on point guidance, the Court notes the Supreme Court's test for an
15 exception to the waiver rule is relevant because the question not presented to the ALJ in
16 this case dealt squarely with whether plaintiff could work given the nature of his
17 impairments. Because the ALJ is uniquely qualified to resolve that issue, it would not have
18 been futile to raise it at the administrative hearing. Given that conclusion, the Court does
19 not interpret *Carr* as creating an exception to the ordinary waiver rule in this case.

20       Under controlling Ninth Circuit law, the administrative waiver rule is limited to
21 cases where a plaintiff fails to apprise the Administration of *factual* matters which the
22 Commissioner is in the best position to evaluate in the first instance. *See Silveria v. Apfel*,
23 204 F.3d 1257, 1260 n.8 (9th Cir. 2000). When the matter before the court is a purely legal
24 question—such as whether the Commissioner followed the appropriate legal rules in
25 evaluating a claim and the evidence is undisputed—the Court may review the matter
26 notwithstanding the plaintiff's failure to raise it before the Administration. *See id.* Thus,
27 whether the Commissioner's final decision will be affirmed or vacated in this matter
28 depends entirely on whether the facts of this case were sufficient to trigger the ALJ's duty

to develop the record. If they were, the ALJ failed to follow the law and the matter must be remanded. If they were not, the ALJ appropriately discharged his duties and the Commissioner's final decision must be affirmed.

Plaintiff's case depends on out-of-circuit authority. *See* Doc. No. 11 at 7 (citing *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020)). In *Sczepanski*, which bears some similarity to this case, the plaintiff testified at the hearing before the ALJ that "she suffered from social anxiety and depression, and that her symptoms were exacerbated by social interaction and stress." 946 F.3d at 155. She also "testified that she suffered from selective mutism and auditory processing problems, and that she was unable to concentrate in environments with background noise." *Id.* The vocational expert opined that plaintiff could work provided she "'should have essentially no contact with the general public and no more than occasional contact with supervisors or co-workers, no fast paced or assembly line or high quota work and no significant noise at the workplace.'" *Id.* Notwithstanding that restriction, the expert opined plaintiff "would be able to work as a laundry laborer . . . an industrial cleaner . . . and a shirt folder." *Id.* Plaintiff's counsel attempted to question the expert about whether different standards for allowed absenteeism would apply during jobs as ordinarily performed versus during a probationary or training period, and the expert opined there would be a difference in employer's tolerance for absenteeism. *Id.* Specifically, the expert opined employers would tolerate up to two absences per month during regular work, but probationary periods would typically have a zero-tolerance attendance policy. *Id.*

The ALJ's ultimate decision included, as part of plaintiff's RFC assessment, that plaintiff would be allowed to miss up to one day of work per month. *Id.* The ALJ concluded plaintiff was not disabled and made no mention of probationary or training periods in the decision. *Id.* The Second Circuit reversed. *Id.* at 162. The Court reasoned there was an unresolved inconsistency in the record because the evidence showed the plaintiff might be subjected to a probationary period with a zero-tolerance attendance policy, but the ALJ's RFC assessment would allow the plaintiff to miss up to one day of work per month. *See id.*

at 158-59, 161-62. The Court remanded so the ALJ could further develop the record to determine whether "even a fraction of the 3 million jobs identified by the vocational expert do not have probationary periods (or permit[ed] absences during their probationary periods)," in which case the plaintiff would still be found not disabled. *Id.* at 162.

In an appropriate case, *Sczepanski* might prove persuasive, but this case differs in a material way because, unlike the plaintiff in *Sczepanski*, the plaintiff in this case did not question the VE at the hearing about the possibility that ubiquitous probationary periods might complicate plaintiff's ability to obtain and maintain work. In *Sczepanski*, the Second Circuit did not hold that an ALJ must ***always*** resolve the issue of a probationary period when the plaintiff's RFC might arguably conflict with a probationary period. Rather, as this Court has explained, the Second Circuit ruled much more narrowly in that it only faulted the ALJ from failing to resolve an evidentiary conflict that appeared in the record based on the VE's testimony. Thus, the Court finds *Sczepanski* distinguishable from this case and declines to follow it.

Binding Ninth Circuit case law, however, provides the rule of decision in this case. In the Ninth Circuit, an ALJ discharges the independent duty to develop the record by questioning a vocational expert whether, consistent with the job descriptions in the Dictionary of Occupational Titles ("DOT"), sufficient jobs exist which the plaintiff may perform given his or her residual functional capacity. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108-1110 (9th Cir. 2018). When a plaintiff wishes to challenge that conclusion, it is the plaintiff's burden to adduce supporting evidence. *See id.* In *Shaibi*, the VE at the administrative hearing testified about the number of jobs available in the regional and national economy for which plaintiff was qualified given his RFC. *See* 883 F.3d at 1108. The plaintiff in *Shaibi* argued, for the first time on appeal, the ALJ should have *sua sponte* compared the VE's estimates against other data in the County Business Patterns ("CBP") and Occupational Outlook Handbook ("OOH"), both of which are subject to "administrative notice" under the controlling regulations. *Id.* The Ninth Circuit rejected plaintiff's argument. *Id.* at 1108-09. The Court reasoned that, at least when a benefits

claimant is represented by counsel, the plaintiff bears the burden of presenting an evidentiary challenge to the VE's testimony. *Id.* The Court held the ALJ is only under a duty to resolve *apparent* conflicts in the VE's testimony, not to raise and resolve hypothetical conflicts between the VE's testimony and some other, unspecified evidence that might conceivably enter the record. *See id.* at 1109-10.

This Court cannot meaningfully distinguish *Shaibi* from this case. In both cases, the plaintiff contended, for the first time on appeal, that an ALJ should have identified when the VE's testimony might conflict with evidence not in the record and *sua sponte* developed the record to resolve the conflict. True, the potential "conflicts" at issue in the two cases differ superficially. In *Shaibi*, the plaintiff identified a hypothetical conflict in the number of jobs available, whereas the plaintiff in this case identifies a potential conflict related to plaintiff's ability to perform available work, at least during a probationary or training period. But in both cases the ALJ would need to look beyond the administrative record based on the VE's facially adequate testimony because the source of both conflicts was not the VE's testimony itself, but another body of evidence not presented to the ALJ during the hearing. Because the Court cannot meaningfully distinguish *Shaibi*, the Court concludes the ALJ was under no duty in this case to raise and resolve—by looking outside the facially adequate record—the probationary period issue plaintiff now presents to this Court. It was, therefore, waived.

Plaintiff attempts to liken this case to a case of "obvious or apparent" conflict in the evidence before the ALJ. *See* Doc. No. 18 at 3 (citing *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016); *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017)). But those cases stand for the much narrower proposition that ALJs must resolve "apparent" conflicts between a VE's testimony and the specific job descriptions in the DOT. For example, an ALJ must resolve the conflict when a claimant is limited to "occasional" fingering with one hand, but the VE testifies the claimant can perform jobs that require "frequent" fingering under the DOT. *See Lamear*, 865 F.3d at 1205-06. In contrast, there is no apparent conflict in the record when a job requires "frequent" reaching, even if a plaintiff is limited

to no "overhead" reaching; at least where it is apparent as a matter of common sense that overhead reaching is not an indispensable function of the listed occupation. *See Gutierrez*, 844 F.3d at 808-09. This case does not present the same situation as either *Gutierrez* or *Lamear* because this is not a case where the VE's testimony was even arguably inconsistent on its face with the DOT. Rather, the only "conflict" at issue is with extra-record evidence that was never presented to the ALJ. The Court accordingly concludes the conflict here was not "apparent" as plaintiff contends, and the ALJ was under no duty to resolve it.

The Court finally considers the negative policy implications of the expanded duties to which plaintiff would hold the ALJ in this case. If, for example, the ALJ was under an obligation to determine plaintiff would likely need to complete a training period, would the ALJ need to go still further by determining whether plaintiff's disabilities could be accommodated under state and federal anti-discrimination law like 42 U.S.C. section 12112(b)(5) or California Government Code section 12940(m)? The ALJ here found plaintiff could perform work as a laboratory equipment cleaner, industrial cleaner, or kitchen helper. Finding out whether plaintiff could be accommodated in all those disparate jobs might requiring calling one or more expert witnesses to opine about on-the-ground working conditions in various sectors of those industries. Might the ALJ need to go still further by resolving each and every *ex post facto* "conflict" a Social Security claimant can identify after the hearing? At the end of the day, case law does not mandate the ALJ conduct a bespoke evidentiary hearing to exhaust every possible fact that *might* impede a plaintiff's ability to work, unless such issues are raised before the ALJ. If particular facts in a particular case might challenge an otherwise reasonable non-disability finding, the plaintiff must tender them. Because plaintiff failed to raise the issue here, the challenge to the VE's testimony is waived and the Court finds no error in the ALJ's determination.

////
////
////
////

## IV     Conclusion

Because the ALJ did not commit an error of law as plaintiff claims, the Court concludes the ALJ's determination was supported by substantial evidence and recommends the District Judge enter an order **affirming** the final decision of the Commissioner in this matter. The filing of any objections (or responses to those objections) to this Report and Recommendation shall be controlled by Federal Rule of Civil Procedure 72(b).

Dated: November 25, 2024

Hon. Karen S. Crawford
United States Magistrate Judge